UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

RICHARD W. COMERFORD                    Civil Action No. 05-10439-WGY
      PLAINTIFF
V.

MICHAEL W. STEWARD et al

## PLAINTIFF'S STATUS CONFERENCE STATEMENT

Status Conference: On or about 3 October 2005 this honorable Court noticed that the above-entitled case had been set for Status Conference on 17 October 2005.

Plaintiff hereby respectfully submits his statement for said conference.

### Background

Service: On or about 3 October 2005 this honorable Court granted plaintiff's motion for leave to proceed in forma pauperis. However plaintiff does not know if the defendants have been served by the U.S. Marshall's Service.

Appearance of Counsel for Defendants: As of this date plaintiff has not been served with a notice of appearance of counsel for the defendants. Plaintiff has, prior to this date and will continue until he is otherwise served with a noticed of appearance, served his papers by First Class Mail upon Assistant U.S. Attorney Barbara Healy Smith ("AUSA Smith") at the U.S. Courthouse in Boston who usually represents the government in plaintiff's cases.

Pleadings: Plaintiff will amend his pleadings pursuant to Rule 15(2) of the Federal Rules of Civil Procedure.

Discovery: Plaintiff intends to take the deposition of the defendants and to conduct discovery pursuant to Part V of the Federal Rules of Procedure.

Venue: This case has been brought before the U.S. District Court for the District of Massachusetts because plaintiff is a resident of plaintiff Plymouth County, Massachusetts and the defendants are federal employees.

<u>Jury Trail</u>: Plaintiff will demand trail by jury.

<u>Facts of the Case</u>: I Richard W. Comerford the plaintiff pro se in the above titled action herby state under the penalty of perjury as attested by my signature below that the information under the title "Facts of the Case" is true to the best of my knowledge and memory as of the date of said signature.

1. Service on Active Guard and Reserve ("AGR") Duty

As evidenced by the findings of the Army Board Correction Military Records ("ABCMR") plaintiff qualified for retirement from military active duty pursuant to 10 USC 3911 on or about October 1992.

As evidenced by the findings of two Massachusetts Army National Guard ("Guard") line of duty investigations, and the findings of the National Guard Bureau ("NGB") and the findings of the ABCMR and the findings of the U.S. Army ("Army") Inspector General ("IG") plaintiff was injured in the line of duty ("ILD") while serving on Active Guard and Reserve ("AGR") duty pursuant to 32 USC 502 (f) on or about August 1993.

As evidenced by the findings of the IG the Guard improperly stopped without due process plaintiff's entitled active duty medical care on or around October 1993

As evidenced by the findings of the IG the Guard also improperly stopped without due process plaintiff's entitled active duty pay and benefits on or about January 1994.

As evidenced by the findings of the Guard medical duty review board ("MDRB") plaintiff was not medically fit for continued military service on or about May 1994.

As evidenced by his commander's certification plaintiff was found to be incapacitated on or about July 1994.

As evidenced by the findings of the Guard medical duty review board ("MDRB") plaintiff was referred to Army medical and physical evaluation boards ("MEB/PEB") for medical retirement on or about April 1997.

As evidenced by the Guard's own record it improperly stopped the referral of plaintiff's case to the Army medical and physical evaluation boards.

As evidenced by the record plaintiff has never received proper medical care for his 1993 ILD injury.

As evidenced by the record plaintiff has never been medically returned to duty.

Pursuant to Army Regulations 40-3, 40-501 and 135-381 a soldier cannot be transferred or discharged from AGR duty until his case his properly disposed of by the medical treatment facility commander.

### 2. Unlawful Reprisals against a Military Whistleblower

As evidenced by the ABCMR findings and IG records plaintiff made a written request for assistance to the Army IG on or about December 1994.

As evidenced by the IG's Report on this matter the IG substantiated each of plaintiff's allegations against the Guard found that: 1) Plaintiff had been injured ILD in August 1993 while serving on active duty; 2) The Guard had improperly stopped plaintiff's entitled medical care in October 1993 and that plaintiff had never been medically returned to duty; 3) The Guard had improperly stopped plaintiff's entitled active duty pay and benefits on or around January 1994; 4) The Guard had falsely reported in its line of duty investigation that plaintiff had received proper medical care and that plaintiff had been medically returned to duty; 5) The Guard had improperly amended plaintiff's active duty orders and had improperly released him from active duty without due process.

As evidenced by the Guard, State Police and Army records on this matter plaintiff was accused by State Police and Guard officers on or around January 1995 of purportedly collecting civilian employment pay for the period from July 1994 to December 1994 from a company titled Phoenix Security USA Inc. ("Phoenix") which was purportedly owned by Mr. David M. Smith (a.k.a. James Smith) then a British subject. Plaintiff's accusers purported that during the same period that plaintiff was collecting so-called incapacitation pay and that he was not authorized to receive said pay.

However as evidenced by the findings, requests and orders of plaintiff's commander, Army IG, the Guard Incapacitation Review Board ("IRB"), the United States Property and Fiscal Officer for Massachusetts ("USPFO"), the NGB, and the Defense Finance and Accounting Service the government, starting around March 1995 authorized the release and issue to plaintiff of so-called incapacitation pay to include back pay for the period starting from July 1994 and until April 1996.

There are approximately 21 documents in the public record that show that plaintiff was authorized to receive incapacitation pay.

Also plaintiff was not collecting incapacitation pay during the period of time the government accused him of collecting employment pay from Phoenix.

As evidenced by a purported profile for Phoenix, which was illegally sent through the U.S. Mail by Mr. Smith, plaintiff was one of approximately 8-people who Mr. Smith purported worked for Phoenix.

3

At least three of these people contacted the State police and informed that agency that Mr. Smith was using their names without their permission.

As evidenced by the records of the Massachusetts Departments of State and Police Phoenix was not incorporated, did not have assets or clients and simply did not exist.

As evidenced by the records of Logan International Airport ("Logan") Mr. Smith had fraudulently submitted the fraudulent profile for his purported company to Logan in a bid to train its so-called "Crisis Respond Unit" ("CRU").

As evidenced by his employment records Mr. Smith had actually worked for another private security company titled North American Security ("North American").

As evidenced by the records of the Massachusetts Departments of State and Police North American was owned by Mr. Michael Taylor, a self admitted criminal wire tapper and known associate of crime boss James "Whitey" Bulger and as evidenced by said records Mr. Tailor's business partner was former FBI Special Agent and now convicted felon John Connolly – who was convicted of taking bribes from Mr. Bulger and who was known to help Mr. Bulger gain access to areas that enlarged Mr. Bulger's crime empire.

As evidenced by the Guard and State Police records plaintiff had been training Logan's so-called CRU pro bono for approximately 5-years prior Mr. Smith submitting a proposal to Logan to train the CRU for a fee.

As evidenced by the State Police record State Police Lieutenant Colonel Edward J. Cronin and State Police James M. Deyermond recommended Mr. Smith for employment by Logan and by other government agencies.

As evidenced by the findings, requests and orders of plaintiff's commander, Army IG, the Guard Incapacitation Review Board ("IRB"), the United States Property and Fiscal Officer for Massachusetts ("USPFO"), the NGB, and the Defense Finance and Accounting Service the government, starting around March 1995 authorized the release and issue to plaintiff with all due process of so-called incapacitation pay to include back pay for the period starting from July 1994 and until April 1996.

### 3. Army Board Correction Military Records ("ABCMR")

On or around 1997 the Guard fraudulently instructed plaintiff to apply to the ABCMR for relief.

However the ABCMR is a federal body and does not have authority to order a State Guard to correct its records.

The government committed fraud against plaintiff and on the Court when it fraudulently claimed that the ABCMR could provide "relief" to plaintiff.

Plaintiff's case was remanded by the Court three times to the ABCMR: in 2000 as a result of an arbitration agreement, in 2001 as a result of a court order and again in 2002 as a result of a fraudulently executed purported settlement agreement to which plaintiff was not a party.

As evidenced by the record the ABCMR did receive an application for relief from Attorney Maxwell in 2000 and 2002.

As evidenced by the record the ABCMR refused to accept an application for relief from plaintiff in 2002.

In 2001 as evidenced by the record the ABCMR in violation of federal statute 10 USC 1556 conducted ex parte communications with the Guard. Although the ABCMR had a copy of the 1994 certification of incapacitation, the 1996 IG Report and the 1997 MDRB findings it ignored the official record. It also ignored federal statute 10 USC 1168 and Army Regulation 135-18 which governs the service on and discharge from of soldiers AGR duty. In its 2001 report the ABCMR falsely claimed that plaintiff had received proper medical care for his August 1993 ILD injury and that he had been medically returned to duty in October 1993.

However in 2001 the U.S. Secretary of the Army ordered that plaintiff's AGR Service be recognized and credited to his record. He did not order or authorize that plaintiff be discharged from AGR duty.

However the ABCMR staff refused to credit plaintiff for his AGR service on his service record.

Service on AGR duty is counted into the annual active duty end strength authorized by Congress.

The Guard had never counted plaintiff into the annual authorized end strength. The ABCMR had based its recommendation to the ABCMR Board on its unlawful ex parte communications with the Guard.

The ABCMR staff now felt compelled to lie yet again and to tamper with the official record to cover up its unlawful ex parte communications.

In 2003 the ABCMR staff and AUSA Smith unlawfully directed the Guard to forge a discharge certificate (DD Form 214) and to unlawfully backdate it to April 1994. Said discharge certificate purported to discharge plaintiff from active duty for training ("ADT") pursuant to 32 USC 505 – which his authority for members of the Guard to attend Army field exercises and Schools – during the period in question plaintiff did not attend Army field exercises and Schools. However soldiers who serve on ADT are not

counted into the annual authorized active duty end strength. By fraudulently citing 32 USC 505 the ABCMR was able to protect the Guards false reporting of its strength and its own unlawful ex parte communications with the Guard. Said discharge certificate in violation of 32 CFR 45 was not signed by plaintiff nor did not bear a date of issue nor did it cite and bear the authority of the Secretary of the Army and nor did it accurately reflect plaintiff's military service.

The purported DD Form 214 did not discharge plaintiff from AGR duty which is performed pursuant to 32 USC 502 (f).

In 2005 plaintiff was contacted by both the Army Reserve and NGB and informed that he has not been discharged from AGR duty and that he remains on AGR duty until he is served with a DD Form 214 separating him from AGR duty.

### 4. U.S. Army Criminal Investigation Division ("CID")

CID knowingly conducted a baseless investigation in order to harass plaintiff, undermine his credibility and to punish him for blowing the whistle on fraud, waste and abuse in the Guard and Army.

CID manufactured evidence, to include perjured testimony from a professional police informant, in an attempt to frame plaintiff for crimes that CID knew that plaintiff did not commit.

CID suppressed evidence that it knew would have exonerated plaintiff.

CID filed a false report and placed in the official record in order to enable government lawyers to claim as an affirmative defense that plaintiff had "dirty hands".

CID improperly "titled" plaintiff in order to ensure that the false accusations would follow him for the rest of his life.

After CID tried to frame plaintiff it failed to follow its own regulations and report plaintiff's purported theft and purported unauthorized pay to the federal and State revenues services and to the Defense Finance and Accounting service for collection back to the government because CID knew that its illegal actions would not bear the scrutiny of said organizations.

When CID's outrageous actions drew the attention of Congress it falsely told Congress that it would "favorably amend" the purported establishment of probable cause but it failed to do so.

Neither the Guard, nor the Army nor CID has apologized to plaintiff for CID's unethical, improper and illegal actions.

## Discussion

Anticipated Legal Issues:

### 1. The Consolidated Action

The government may claim that this matter was settled in a related consolidated action for the cases numbered 99-11962-WGY; 00-11712-WGY and 01-11671-WGY on or around 2002. A purported settlement agreement was in fact signed by AUSA Smith and plaintiff's purported attorney Eric S. Maxwell for two of the three cases in the consolidated action (Nos. 99-11962 and 00-11712). However as evidenced by the record plaintiff was pro se in the consolidated action. Mr. Maxwell had not made an appearance as plaintiff' attorney in said action. Plaintiff had not retained Mr. Maxwell to represent him as his attorney in said action. This honorable Court did not notice plaintiff of its orders in the case. The government did not serve plaintiff. As plaintiff was not a party to the purported settlement agreement it is not binding on him.

This honorable Court may state that plaintiff settled and voluntarily dismissed his previous claims in the consolidated action. However if it does so plaintiff will point to the Court's own record which will show that the Court ruled that he was pro se in the consolidated action and that the purported settlement was reached by fraud on the Court by AUSA Smith and Attorney Maxwell.

### 2. Bivens Relief

The government will argue that no Bivens relief is available because there is no Bivens remedy available for injuries that arise out of or in the course of military service. However plaintiff is not seeking monetary damages.

The government will argue that plaintiff's claims are barred by the three year statute of limitations applicable to civil rights actions. However plaintiff field his suit within 3-years of plaintiff receiving a copy of the purported establishment of probable cause against him.

### 3. The Transactional Approach

The government will argue that the facts of both actions come from the same transaction. However the government in the prior case did not inform plaintiff that it had purportedly established probable cause against him. It did in an effort to defame plaintiff and to undermine his credibility tell other parties that it purportedly established probable cause against him.

Moreover if the government had abided with its fraudulently procured purported settlement agreement with Attorney Maxwell this matter with the entire official record would have been placed before that Board. However Mr. Maxwell did not deign to

7

submit an application to the ABCMR and the ABCMR staff refused to accept an application from plaintiff pro se.

Venue: This case has been brought before the U.S. District Court for the District of Massachusetts because plaintiff is a resident of plaintiff Plymouth County, Massachusetts and the defendants are federal employees.

Jury Trail: Plaintiff will request trail by jury.

## Conclusion

Plaintiff believes that he has a right to bring this suit not only to recover his good name and reputation and also because the actions of the defendants have infringed on his constitutionally guaranteed freedoms; but to finally bring to an end a baseless 12-year investigation of plaintiff conducted by the defendants in unlawful reprisal against plaintiff for blowing the whistle on fraud, waste and abuse within the Guard and the Army

Respectfully submitted,

Richard W. Comerford Pro Se
9 Speedwell Lane
Plymouth, Massachusetts 02360
(508) 833-9396

Dated: 13 OCT 05

Certificate of Service

I hereby certify as attested by my signature above that on the date of said signature I served a true copy of this motion by First Class Mail upon AUSA Smith at the U.S. Courthouse in Boston.

8