UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Richard W. Comerford Pro Se
    Plaintiff,

v.                                        C. A. No. 05-10439-WGY

Michael W. Steward et al
    Defendant,

### PLAINTIFF'S REPORT TO THE COURT

Plaintiff respectfully hereby submits his Report pursuant the honorable Court's October 17, 2005, Order.

#### Penalty of Perjury

I, Richard W. Comerford, the plaintiff in the above captioned case do hereby state under the penalty of perjury as attested by my signature below that the information contained in this statement is true to the best of my knowledge and memory as of the date of said signature.

### Background

#### The Government's Report to the Court

Plaintiff is in receipt of the government's Report to the Court dated 10 November 2005. Said Report contains numerous false, misleading and incomplete statements as well and information defamatory to plaintiff. Plaintiff hereby accuses Assistant United States Attorney ("AUSA") Barbara Healy Smith of committing fraud on this honorable Court.

### The Medical Exam was Neither Requested, Authorized, Required or Funded by Either the U.S. Departments of Defense, Homeland Security, Army or Coast Guard

Plaintiff has been in communication with the U.S. Department of the Army Inspector General, Walter Reed Army Medical Center, the North Atlantic Medical Area Command, U.S. Air Force Medical Clinic at Hanscom Massachusetts and his member of Congress on this matter. Plaintiff has also made four lawful requests pursuant to the Freedom of Information Act on this matter. Further plaintiff has carefully reviewed the documents he has received pursuant to approximately 10-years of lawful Freedom of Information Requests he has made pertaining to this matter. Finally plaintiff has reviewed the relevant federal statutes, regulations and directives. Based on the above he has learned the following which contradicts the claims made in the government's report to this honorable Court and by AUSA Smith in the Status Conference held on 17 October 2005 on this matter.

1. Neither the U.S. Department of Defense, Homeland Security the Coast Guard or Army requested, authorized, funded or required plaintiff to undergo a medical examination on or around November 2005. The purported purpose of said exam

was to determine if plaintiff was fit for retention in the U.S. Army Reserve so that plaintiff can serve for 8-more months in order to complete 20-years of service in the Reserve. However as evidenced by the record plaintiff had completed twenty years service in 1995. He was subsequently awarded his "Twenty Year Letter" certifying said service. Nor was there any other outstanding order, requirement, funding or authorization for plaintiff to undergo a military medical examination for any other purpose. In short AUSA Smith lied to this honorable Court.

2. The U.S. Departments of Defense and Army contacted plaintiff through the good offices of his Member of Congress on or around April 2005. Both Departments, contrary to the claims made by AUSA Smith, informed plaintiff: a) he was still serving on full time Active Guard and Reserve duty; b) he had never been discharged from Active Guard and Reserve duty; c) he remains on Active Guard and Reserve duty until such time as he is issued a DD Form 214 separating him from Active Guard and Reserve duty. In short AUSA Smith lied to this honorable Court.

3. Since on or around September 1999 the government has wrongly argued in Court papers that "This court lacks jurisdiction over plaintiff's claim's concerning his statutes in the National Guard because the Army Board for Correction of Military Records is the exclusive forum for such claims". The Army Board Correction of Military Records ("Board") does not have under law or regulation either jurisdiction or authority in this matter. Nor is plaintiff's case before the Board.

Nor will the Board act on plaintiff's requests once he has undergone a medical exam. The Board has also written to plaintiff's Member of Congress. In said letters the Board, a federal body, admitted that it does not have jurisdiction or authority relative to plaintiff's claims concerning his Active Guard and Reserve duty in Massachusetts National Guard which is a State body. Pursuant to Section 1552 of Title 10 of the U.S. Code and U.S. Army Regulation 15-185 the Board does not have authority over a State National Guard. In short AUSA Smith lied to this honorable Court.

Nevertheless plaintiff agreed to submit to not one but two military medical exams in November 2005.

## AUSA Smith and Army Attorney Ausprung Improperly Scheduled An Unauthorized Exam by the U.S. Department of the Air Force.

AUSA Smith and Army Attorney Ausprung originally scheduled plaintiff for a medical exam at Hanscom Air Force Base in Massachusetts on 8 November 2005. Said exam was made without authorization, funding or request from either the U.S. Department of the Army or the Air Force. Said exam was also made without a mandatory request from the Army Board Correction Military Records asking for a medical exam in conjunction with the correction of plaintiff's record pursuant to paragraph 4=45 of U.S. Army Regulation 40-501.

### The U.S. Air Force Informed Plaintiff That It Could Not Perform the Medical Exam and Referred Plaintiff to Walter Reed Army Medical Center

However the Air Force after consulting with legal counsel, refused to examine plaintiff citing both legal and ethical reasons. *(Note: in violation of paragraph 4-45 of U.S. Army Regulation 40-501 the Army Board Correction Military Records had not requested the U.S. Department of the Air Force to examine plaintiff. Also plaintiff did not have a military identification nard to access military health care. Further plaintiff was not enrolled into DEERS [Defense Enrollment Eligibility Reporting System] and was not authorized military health care to include examinations. Finally plaintiff was not "on order" to receive a medical exam and said exam could not be funded without orders.)* Plaintiff was telephoned by Air Force LTC Gale Skousen M.D. who told him that his case should be referred to Walter Reed Army Medical Center. He also told plaintiff that there were funds available to send him to Walter Reed Army Medical Center for said exam. LTC Skousen further offered to host a U.S. Army Medical Doctor at Hansom AFB to conduct said exam. Finally U.S. Army Regulation 40-501 allows said medical exam to be perfumed by plaintiff's family doctor.

### The U.S. Army Inspector General Scheduled A Proper Medical Exam at Walter Reed Army Medical Center for Plaintiff

After LTC Skousen telephone call plaintiff he telephoned the U.S. Army Inspector General for assistance. The U.S. Army Inspector General referred plaintiff to the Walter

5

Reed Army Medical Center Inspector General who in turn referred plaintiff to hospital administration for an authorized, funded medical exam. However Army Attorney Ausprung blocked said appointment.

### Army Counsel Ausprung Cancelled the Medical Exam at Walter Reed Army Medical Center

After an appointment for an authorized and funded medical exam for was requested for plaintiff at Walter Reed Army Medical Center by the Inspector General Army counsel Ausprung overruled the U.S. Army Inspector General and cancelled it.

### AUSA Smith and Defense Counsel Ausprung Scheduled a Second Unauthorized Exam at the Coast Guard Base

Although there is an active Army Post in Natick, Massachusetts and although LTC Skousen had recommended that plaintiff's case be referred to Walter Reed Army Medical Center or, in the alternative, that he would host a U.S. Army Medical Doctor AUSA Smith and Army counsel Ausprung scheduled a second exam at the Boston Coast Guard Base for plaintiff. Said exam was not authorized, funded, recognized or required by the U.S. Departments of Defense, Homeland Security, Army or Coast Guard. The head of the Clinic, U.S. Department of the Coast Guard Commander Mulligan, described said exam in plaintiff's hearing as a "favor". The U.S. Department of the Coast Guard was unaware of said exam and had neither authorized or funded it.

### Plaintiff **Was Found Fit for Duty** by The U.S. Department of the Coast Guard

On or about 8 November 2005 Coast Guard Commander Katherine G. Mulligan told plaintiff that he was "fit for duty" after a medical examination at the U.S. Coast Guard medical clinic in Boston.

As evidenced by the medical record of the exam plaintiff gave blood and urine samples. Plaintiff also underwent various medical tests to include eye examination, hearing examination and an EKG. A detailed medical history was taken by HS1 Delzer – the acting clinical administrator. In said medical history plaintiff stated he was "fit for duty". Plaintiff signed the medical exam record making it an official document. During the medical examination and in plaintiff's presence Commander Mulligan was in constant telephone contact with defense counsel and U.S. Army Captain Rebecca E. Ausprung openly discussing plaintiff's medical history and violating plaintiff's medical privacy.

### Defense Counsel Ausprung Tampered with the Medical Exam

Plaintiff arrived at the Cost Guard Base with medical records which he had received pursuant to lawful freedom of information requests. These medical records included a 1997 medical duty review board finding. Said Board found plaintiff "not medically fit for continued service" and referred plaintiff to Walter Reed Army Medical Center for a medical evaluation board. However Army counsel Ausprung had unethically faxed to

7

Commander Mulligan the medical records of another soldier and purported that said records were plaintiff's medical history. During the course of the medical exam defense counsel Ausprung unethically advised Commander Mulligan to disregard the findings of the 1997 medical duty review board. (Note: Pursuant to U.S. Army Regulation 40-3, 40-501 and 135-381 the medical duty review board findings must be considered by any examiner and the medical evaluation board, to which plaintiff's case had been referred, must authorize any subsequent exam.)

Army counsel Ausprung also falsely stated to Commander Mulligan that plaintiff was currently a member of the U.S. Army Individual Ready Reserve ("IRR"). Army counsel Ausprung further falsely stated to Commander Mulligan that the purported purpose of the exam was for Commander Mulligan to determine if plaintiff was fit for retention in the IRR. The purpose of said determination was to allow plaintiff to purportedly complete 20-years of Reserve service. However, as mentioned above, plaintiff had completed 20-years service in 1995 and had been awarded a "Twenty Year Letter". Plaintiff provided a copy of said letter to the clinic administrator, the acting administrator and Commander Mulligan

### Plaintiff Is Informed By the Coast Guard That He Is a Civilian and That the Coasts Guard Cannot Perform the Medical Exam

After Commander Mulligan had informed plaintiff that he was fit for duty U.S. Coast Guardsman HS1 Delzer informed plaintiff that he had entered plaintiff's name into the

Defense Enrollment Eligibility Reporting System ("DEERS"). He also told plaintiff that the DEERS had reported him as discharged from the Army and without either an active duty or a reserve duty or retired identification card linked to his name. HS1 Delzer further informed plaintiff that he was a "civilian" and that the U.S. Coast Guard medical clinic could not provide plaintiff with medical services to include a medical exam.

HS1 Delzer next informed Commander Mulligan in plaintiff's presence that plaintiff was a civilian. He also told Commander Mulligan that the U.S. Coast Guard clinic could not examine plaintiff. Commander Mulligan then informed plaintiff that his case would be referred to Walter Reed Army Medical Center. Plaintiff was next escorted under guard from Commander Mulligan's office and held against his will for approximately one hour at the Coast Guard base. At one point plaintiff was guarded or escorted by three Coast Guards men, two of whom were armed.

### Purported Referral to Walter Reed Army Medical Center

Despite the fact that both the U.S. Departments of the Air Forces and Coast Guard recommended that plaintiff's case be referred to Walter Reed Army Medical Center plaintiff's case has not been referred to Walter Reed Army Medical Center. Plaintiff believes that AUSA Smith and Army Counsel Ausprung have again improperly blocked said referral in order to advance their own professional careers.

### Defamatory Statements by AUSA Smith and Commander Mulligan

AUSA Smith and Commander Mulligan have painted a damnatory picture of plaintiff. They complain that plaintiff was purportedly uncooperative and argumentative. The real problem as mentioned above was that Army Attorney Ausprung had unethically provided Commander Mulligan with the medical records of another soldier. Commander Mulligan refused to believe that she had the wrong patient records (Note: As mentioned above plaintiff also did not have a military identification card. He was also not enrolled in DEERS. These administrative failures on the part of the U.S. Department of the Army caused questions to be raised about plaintiff's identity.) It was not until plaintiff leaned over Commander Mulligan's desk and pointed out that the name on the patient record was not his own but that of another soldier that she finally admitted that she had the wrong medical records. Plaintiff was cooperative, obedient and even docile at all times with U.S. Coast Guard personnel.

Plaintiff Was Harassed and Bailed by U.S. Coast Guard Personnel

Plaintiff was deliberately mocked, harassed, bulled, taunted and baited by U.S. Coast Guard personnel. He was kept in confinement or under guard to include armed guard during his entire time 5-hour incarceration at the U.S. Coast Guard clinic. Plaintiff was treated by the U.S. Coast Guard personnel like a convicted terrorist.

Plaintiff Was Obedient and Docile

Plaintiff was obedient and docile during his entire visit. This included plaintiff standing with his hands folded demurely in front of his body with his eyes downcast in order to placate his armed guards - one of whom was obviously eager to put a bullet into plaintiff's head. As evidence of his good behavior although the U.S. Coast Guard personnel were eager to arrest, and if given the opportunity, to shoot plaintiff, they were unable to do either and plaintiff managed to leave the U.S. Coast Guard base for the real world without bullet wounds. (Note: Plaintiff as evidenced by the record suffers from a Hiatal hernia which causes chest pain and shortness of breath. His doctors have ordered that he eat regular meal in order to avoid said symptoms. The U.S. Coast Guard ordered plaintiff to fast for 12-hours prior to arrival. He was then detained against his will for a further 5-horus without food. Plaintiff asked Commander Mulligan for relief which she declined to give him. (Commander Mulligan in response to plaintiff said "I am sorry"). Plaintiff in order to ease the chest pain and to breathe easier stood up and tried to walk. Although he walked several steps away from U.S. Coast Guard personnel and said nothing to them this action of standing and walking was immediately interpreted by the U.S. Coast Guard as an act which threatened National Security. It is no wonder we are loosing the war on terror.

### Discussion

The U.S. Departments of Defense, Homeland Defense, Army and Coast Guard are vast, impersonal bureaucracies. Nothing can be accomplished without proper paper work done in accordance with the relevant service regulation. On the other hand with timely, proper

paper work administrative actions, to include, medical exams can be efficiently executed by the various military Departments. The problem in this matter is that AUSA Smith and Army Attorney Ausprung deigned to initiate written requests through proper channels pursuant to the relevant service regulation. Instead they made telephone calls using the Boston federal old girl network in an attempt to coordinate an unauthorized, unfunded and militarily unnecessary medical exam - a medical exam that they knew or should have known could not be properly performed, finished and processed into the military medical system for the following reasons:

1. Plaintiff did not have a military identification card and therefore could not be admitted to the military medical system.
2. Plaintiff was not enrolled into DEERS (Defense Enrollment Eligibility Reporting System) and therefore was not eligible for medical care to include medical examination.
3. Plaintiff was not "on orders" i.e. he had not been issued military orders citing authorization for funding and authority to conduct the medical exam.

One of the reason why the government attorneys ignored both service regulations and common sense in failing to properly coordinate the medical exam is that since on or around January 1985 the U.S. Departments of Defense and Army have unlawfully failed to notify Congress of plaintiff's service on Active Guard and Reserve duty in violation of Section 8 of Article I of the U.S. Constitution, Section 502 (f) of Title 32 if the U.S. Code and U.S. Army Regulation 135-18. Both Departments lack the moral courage to admit

that they lied to Congress. Instead they have for 12-years harassed plaintiff with baseless criminal accusations, withheld his entitled active duty pay and medical care and refused to authorize him to collect civilian employment pay which has reduced him to a status of a pauper.

## Conclusion

It is clear that the U.S. Departments of Defense, Homeland Defense, Army and Coast Guard did not request, require, authorize or fund the November 2005 medical exam at the U.S. Coast Guard base in Boston. It is also clear that there is no outstanding request, requirement, authorization or funding by the U.S. Departments of Defense, Homeland Defense, Army and Coast Guard for plaintiff to undergo any type of medical exam for any reason. Further it is now clear that there was never a lawful requirement for plaintiff to undergo a medical exam for retention in 2001 to complete 20-years service because he competed said service in 1995 and was issued a "Twenty Year Letter: in recognition was said service.

The requirement for a medical exam has always been a falsehood. Said falsehood has been perpetrated by AUSA Smith for 4-years to keep plaintiff in a legal limbo - a limbo in which plaintiff has been unlawfully deprived of his civil, constitutional and inalienable rights. Also this falsehood has protected AUSA Smith from taking responsibility from unlawfully removing this matter from State Court in 1999 and for fraudulently signing a

purported settlement agreement with Attorney Eric S. Maxwell after this honorable Court had ruled that plaintiff was pro se.

After the U.S. Department of the Air Force refused to conduct an improper and unauthorized medical exam and referred this matter to Walter Reed Army Medical Center Plaintiff could have undergone an authorized, funded and proper medical examination. However AUSA Smith and Army Attorney Ausprung blocked the authorized, funded and proper medical examination at Walter Reed Army Medical Center; and instead scheduled an unauthorized, unfunded and improper medical exam at U.S. Coast Guard base in Boston. Even then a proper medical exam could have taken place at either Walter Reed Army Medical Center; or at Hanscom Air Force Base by an Army Doctor or even by plaintiff's civilian doctor. (Note: pursuant to U.S. Army Regulation 430-3 the aforementioned medical exam can be done by a civilian medical doctor at his civilian office.)

There is no doubt that the reason behind the unauthorized, unfunded and improper medical exam at U.S. Coast Guard base in Boston and the ensuing harassment suffered by plaintiff therein, was to provoke plaintiff into an emotional outburst brought on by 12-years of living without either entitled active duty pay or discharge from Active Guard and Reserve duty. Said outburst would had led to his subsequent arrest or death at the hands of over eager, and over armed security personnel in the super charged, post 9/11/01 atmosphere of a closed, heavily guarded military installation. In so doing AUSA Smith

and Army Attorney Ausprung would have ridded them of what they clearly considered to be an administrative annoyance as well as a professional embarrassment to their careers.

Plaintiff believes that the only reason that he is alive and at liberty today is that he entered the U.S. Coast Guard base in Boston expecting to be set up and was mentally prepared to be docile.

Plaintiff has complied with the Court's order. He has undergone a medical exam, albeit a seriously flawed one, and he has been pronounced fit for military duty by an alleged military medical doctor. Plaintiff agrees with the finding. He again, as he has done every year since 9/11/01, hereby volunteers for a combat assignment in any place in the world. If on the other hand AUSA Smith and Army Attorney Ausprung demand yet another medical exam, which by plaintiff's count will be his 33rd since he was injured in the line of duty rescuing a comrade in 1993, plaintiff will cheerfully submit once again – provided said exam is done in accordance with Army regulations 40-3, 40-501, 135-381 and 135-18, otherwise said exam will be another farce, a waste of the taxpayers' money and another chance for the government attorneys to put plaintiff either into jail or the grave.

Pursuant to the aforementioned regulations the U.S. Department of the Army will have to take the following administrative actions for a properly executed medical exam:

1. Issue a military identification card. Every member of the U.S. Department of Defense, active, reserve and retired has one except for plaintiff. (Note: In 1996 the U.S. Department Army of the Army Inspector General found that plaintiff's superior officers had unlawfully taken plaintiff's active duty military identification card away from him in January 1994 which prevented him from receiving proper, entitled medical care. The U.S. Department Army of the Army has never taken corrective action and re-issued a military identification card to plaintiff.)

2. Issue plaintiff valid, dated, signed military orders, citing the statutory authority, directing plaintiff to undergo an authorized medical exam at government expense.

3. Pursuant to paragraph 4-45 the U.S. Army Regulation the Army Board Correction Military Records must request a medical exam in conjunction with an appeal from plaintiff for the correction of his records.

4. The U.S. Department Army of must place plaintiff into DEERS (Defense Enrollment Eligibility Reporting System).

5. Plaintiff must be provided with a complete copy of his medical record to include all medical board action. (Note: Plaintiff's case has been reviewed or referred to three military medical boards since 1997.) The U.S. Department of the Army has

unlawfully withheld plaintiff's medical records from him since 1993. Instead it substitutes the records of another soldier which causes endless confusion.

Plaintiff hereby respectfully states to this honorable Court that he fears for his life if he is required to undergo another unauthorized, undocumented and unfunded military medical exam. (Note: As mentioned above pursuant to U.S. Army Regulation 430-3 the aforementioned medical exam can be done by a civilian medical doctor at his civilian office.)

Respectfully submitted,

Richard W. Comerford Pro Se
9 Speedwell Lane
Plymouth, Massachusetts 02360
(508) 833-9396

Dated: 23 Feb 06

Certificate of Service

I hereby certify as attested by my signature above that I served by First Class Mail on the date of said signature a true copy of the above document upon AUSA Smith at the U.S. Courthouse in Boston.